```
                                                                    1

1                  UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF NEW YORK
2
    - - - - - - - - - - - - - - - X
3
    UNITED STATES OF AMERICA,       : 11-CR-00819(RRM)
4                                   :
                                    :
5                                   :
          -against-                 : United States Courthouse
6                                   : Brooklyn, New York
                                    :
7                                   :
                                    : Friday, July 8, 2016
8   FARUQ KHALIL MUHAMMAD ISA,      : 10:30 a.m.
                                    :
9            Defendant.             :
                                    :
10
    - - - - - - - - - - - - - - - X
11

12
          TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
13             BEFORE THE HONORABLE ROSLYNN R. MAUSKOPF
                    UNITED STATES DISTRICT JUDGE
14

15
                      A P P E A R A N C E S:
16
    For the Government:   ROBERT L. CAPERS, ESQ.
17                           United States Attorney
                             Eastern District of New York
18                           271 Cadman Plaza East
                             Brooklyn, New York 11201
19                      BY:  PETER W. BALDWIN, ESQ.
                             TIANA DEMAS, ESQ.
20                           Assistant United States Attorney

21  For the Defendant:    FEDERAL DEFENDERS OF NEW YORK, INC.
                          BY:SABRINA P. SHROFF, ESQ.
22                           SAMUEL I. JACOBSON, ESQ.

23  Court Reporter:   Stacy A. Mace, RMR, CRR
                      Official Court Reporter
24                    E-mail:  SMaceRPR@gmail.com

25  Proceedings recorded by computerized stenography.  Transcript
    produced by Computer-aided Transcription.


              SAM      OCR      RMR      CRR      RPR
```

Proceedings                                                              2

1              (In open court.)
2              THE COURTROOM DEPUTY:  Case number 11-CR-819, the
3    United States of America versus Isa.
4              Please state your appearances for the record
5    beginning with the Government.
6              MR. BALDWIN:  Good morning, Your Honor.  Peter
7    Baldwin and Tiana Demas on behalf of the United States, and
8    with us at counsel table are interns from our office Dennis
9    Howe and Immanuel Kim.
10             Good morning.
11             MS. DEMAS:  Good morning.
12             THE COURT:  Good morning.  Welcome.
13             THE COURTROOM DEPUTY:  For the defense.
14             MR. JACOBSON:  Good morning, Your Honor.  Sam
15   Jacobson and Sabrina Shroff on behalf of Mr. Isa, who is
16   present and present at counsel table.
17             MS. SHROFF:  Good morning.
18             THE COURT:  All right, welcome to you all.
19             Ms. Shroff, I guess I should just put on the record
20   I thought we had been using an interpreter previously, did we
21   or did we not?
22             MS. SHROFF:  I don't believe so, Your Honor.
23   Mr. Isa has not requested the use of an interpreter in the
24   past.
25             THE COURT: And in your view he does not need any

Proceedings 3

1 kind of translation services?
2     MS. SHROFF: No, Your Honor, he does not.
3     THE COURT: All right.
4     MS. SHROFF: We have not felt a need for the use of
5 an interpreter. In the event that changes because of the
6 complexity of languages, I will be certain to resolve the
7 issue with the Government.
8     THE COURT: And let me just ask: Mr. Isa, you speak
9 and understand English?
10     THE DEFENDANT: Good and not good. Yes. I know
11 there's some words may be hard when it comes about the law.
12     THE COURT: All right.
13     THE DEFENDANT: So --
14     THE COURT: All right, for purposes of today's
15 proceeding, do you feel you need an interpreter?
16     THE DEFENDANT: I don't know if I will need it today
17 or not, but I don't know if I may need it. Okay. No need.
18 No need.
19     THE COURT: All right, I mean this little
20 conversation has given me a little bit of an understanding of
21 Mr. Isa's facility with English.
22     MS. SHROFF: You know, if we were talking about --
23 if we were engaged in motion practice or if we were discussing
24 some kind of legal argument, perhaps we would have standby
25 interpretation, but I don't think Mr. Isa normally uses an

    SAM    OCR    RMR    CRR    RPR

Proceedings                                                        4

1  interpreter.
2            THE COURT:  And when you have communicated with
3  Mr. Isa, have you communicated with him in English?
4            MS. SHROFF:  Yes, Your Honor.
5            THE COURT: All right.  Okay.  I am satisfied that
6  we can proceed today.
7            All right, it has been a while since we had gotten
8  together.  That does not mean that things have not been going
9  on.  I know from the letters that I received, the parties are
10 hard at work.
11           So why don't I ask the Government where things stand
12 from the Government's perspective with respect to discovery,
13 conversations; and I am going to do the same with respect to
14 the defendant.
15           MR. BALDWIN:  Thank you, Your Honor.
16           Yes, I think the Court is correct.  It has been --
17 our last status conference was in mid-February, but there
18 certainly has been movement on a variety of fronts over the
19 course of the last few months.
20           With respect to discovery, there hasn't been really
21 any additional discovery produced since the last status
22 conference, but as the Court is aware, the volume of what was
23 produced at that point was exceedingly large.  We had
24 previously related to the Court that principally among that
25 discovery was a wiretap from Canada that consisted of recorded

              SAM       OCR       RMR       CRR       RPR

Proceedings     5

1  calls and e-mails and text messages for over a year-long
2  period.  So there is an exceedingly large amount of discovery
3  in this case principally made up of those wiretap materials.
4          THE COURT:  But an additional trove of classified
5  materials?
6          MR. BALDWIN:  Yes, Your Honor.  Yes, that's correct.
7  There are classified materials that have been produced.  I
8  would say the volume of those is low.  I think, if I recall
9  correctly, something like fifty reports that were turned over
10 a few months ago.
11         With respect to the discovery that has been
12 produced, I know based on my discussions with defense counsel
13 that they have been diligently trying to get through the
14 discovery.  They have raised to me certain issues about how
15 the review of that discovery is somewhat difficult in this
16 case.  Principally because of how it was turned over to us by
17 the Canadian government.
18         THE COURT:  We talked about that last time, the
19 platform.
20         MR. BALDWIN:  We did.  Yes, Your Honor, and we have
21 continued those discussions.  Unfortunately, at this point in
22 time I don't have a whole lot in the way of a great fix for
23 them.  Our review is principally done in the same way theirs
24 is.
25         That said, we had a conversation last week where

1  defense counsel raised certain issues with me and I was able
2  to go back to our team, and I think that I may have some
3  materials that may assist in the review of some of the calls
4  from the wiretap, some draft transcripts that we received from
5  the Canadian authorities that we can turn over, as well as
6  some work that we have done in terms of identifying specific
7  conversations, texts, e-mails, that we feel are particularly
8  relevant and likely to be used at trial.
9              I know that we have no obligation to turn those
10 over, but in an effort to sort of move the process along, what
11 I anticipate doing is turning over those materials, which have
12 already been turned over, but they would simply be -- it would
13 be in an effort to identify what we believe are important
14 conversations, along with whatever transcripts we have of
15 those communications.  We will do our normal stipulation that
16 those transcripts are currently draft transcripts that we
17 would not intend to use at trial, but my hope is that by
18 turning those materials over, while it's not the entirety of
19 the materials, at least we can give sort of a roadmap and also
20 help with the review of the materials.
21             So with respect to that discovery, we will continue
22 to work with defense counsel to do what we can to assist in
23 their review of the materials, fully recognizing that it is a
24 time-consuming endeavor.
25             So that is the materials that are turned over.

Proceedings                                                              7

            With respect to any additional discovery, obviously,
as we always do, we continue to comb through our files and
there is some additional discovery that I believe will be or I
anticipate will be produced in short order.  It is not a
voluminous amount of material.  And I have been reviewing and
putting that stuff together.  I would anticipate at some point
within the next week to ten days that that material should be
ready to turn over.  Again, not voluminous, a lot of
photographs, some additional materials, but those will be
turned over in short order.

            With respect to classified discovery, at this point
in time I don't anticipate additional classified discovery,
but obviously to the extent that that changes we will alert
defense counsel and the Court as soon as possible so that
everybody is aware of what is going on.

            I think that, essentially, covers it with respect to
discovery.

            A couple other issues to raise with the Court while
I have the floor.

            I just wanted to raise one issue for the Court that
could be something that would require the Court's attention.
We have requested via an MLAT, we've issued a couple MLATs in
this case, and one of them that we have issued is to the
Government of Tunisia requesting Rule 15 depositions of
multiple Tunisian citizens who have relevance to the charges

Proceedings 8

in this case. That MLAT was issued several months ago. To date we have no affirmative response saying, you know, yes, you can or no, you can't come to do these depositions, but we are continuing to press on that. It is our goal to do those depositions. So, obviously, we will keep the Court and defense counsel apprised of that situation so that everybody can be involved in that process and it can be done on a schedule that works for everybody. So that is one additional issue.

And then the last issue that I wanted to raise, Your Honor, and perhaps it's something that's better done after defense counsel gets a chance to speak, but we just wanted to raise the issue with the Court today of potentially starting to talk about a schedule moving forward for motion practice and for trial. I have discussed this with defense counsel and sort of thrown out some thoughts for potential dates. You know, obviously, they, I am sure, have their own thoughts about that, but if the Court is wanting to hear discussion of that today, we are prepared to address that as well.

THE COURT: We had raised that last time as well that everyone thought that by the time we reconvened that it might be right, but let's see where we are.

MR. BALDWIN: Your Honor, if you want to hear from us on that now, I'm happy to throw out my suggestion that I've thrown out to defense counsel.

THE COURT: Might as well.

MR. BALDWIN: So recognizing the volume of discovery here and not wanting to set an unreasonable schedule, what I had thought may be appropriate here, and our suggestion or our request would be to set a trial date. Perhaps something in or around March 1 of 2017. And then a motions date of a few months in advance of that, perhaps a November of 2016 motions date, which would leave several months in advance of trial for any additional issues to be sorted out.

I have raised those dates with defense counsel. They can, obviously, address that with the Court on their own, but that's, at least right now, is sort of where we stand in terms of how we see the case progressing, any additional discovery, that seems to be a reasonable schedule. But, of course, we will work with the Court and work with defense counsel so that everybody has something that they believe is reasonable.

THE COURT: And that schedule, for purposes of discussion, contemplates the Tunisian depositions?

MR. BALDWIN: It does, Your Honor. You know, candidly, I don't know what the likelihood is that we will be able to do those. I hope that we will, and we certainly continue to press to be able to do that.

Based on my prior experience in similar requests and with the Tunisian government, frankly, I just have little

Proceedings                                                     10

1  ability to predict how this is going to turn out.  And my
2  sense is that if we are granted permission to do it, it would
3  likely have to be something that we would have to try to move
4  on relatively quickly.  So they would say something like,
5  well, you can be here in three weeks.  Obviously, we would
6  have to work that with all the parties here, but I think that
7  that would give time so we can, hopefully, get an affirmative
8  or not answer on our request.  But obviously, you know, to the
9  extent that that does come up, we can address that with the
10 Court and address any scheduling difficulties it may cause.
11             THE COURT:  All right.
12             MR. BALDWIN:  Oh, and yes, Your Honor, one final
13 thing.  Just, as I am sure the Court is aware, the Government
14 has submitted its CEPA brief.
15             THE COURT:  Yes.
16             MR. BALDWIN:  And that is pending before the Court
17 as well.
18             THE COURT:  Yes.
19             MR. BALDWIN:  Thank you.
20             THE COURT:  Mr. Jacobson, Ms. Shroff?
21             MS. SHROFF:  Well, Your Honor, I am sorry, but I
22 don't think we are in a position to set a trial date today and
23 I can tell the Court why.
24             THE COURT:  Sure.
25             MS. SHROFF:  So, Mr. Jacobson and I have been

reviewing the discovery as the Government has stated and we are much more behind than one would like to be, I guess, is the right phrase to use, not because of fault on that side of the room or this side, but discovery the way it is produced and, you know, not that I want to subject you to this, Judge, but if you were to look at the discovery, for example, you would see literally files and files that we would open without knowing what that file -- we don't even have an index.

THE COURT: Right, you mentioned this the last time, so I have a very good sense of the manual effort that it takes to go through a file and a sub-file without knowing what you are going to discover in there. And given the way the Government has described the volume of information, I understand the burden. I do not think there is any dispute. As you have just said, the burden is the same on the Government as it is on the defense.

MS. SHROFF: Right. So we offered them, we said, look, maybe -- and, you know, Mr. Baldwin didn't say no. I want to be fair to him, too. We offered, we said, okay, to the extent you have an index, share; or to the extent if you can agree that we can split the cost of creating an index using an interpreter that charges $120 an hour, we'll share. Whatever is something that we can come up with, we can try and work our way towards that goal. We are not there yet.

THE COURT: Okay.

Proceedings                                                              12

1    MS. SHROFF: The second thing is I am not surprised,
2    but I was unaware of an MLAT request to Tunisia. So I am not
3    sure if we are going to get a copy of the MLAT request, I'm
4    assuming not from the smile on Mr. Baldwin's face, but I would
5    like to explore what's going on there a little bit more. And,
6    of course, depending on what he gives -- well, sometimes the
7    Government does share an MLAT request, off the record,
8    sometimes they give us a copy, so that our investigation is
9    not stalled until we find out from the Rule 15 notice who you
10   are trying to depose, and then we give you notice of who we
11   are going to try and depose. So then that elongates the
12   process. So every once in a while the Government just says,
13   these are the people we seek to depose.
14            Considering the fact that we are here and the
15   witness is in Tunisia, there is hardly any risk of safety or
16   harm. So sometimes the Government makes the disclosure, but
17   that would just make things move along, maybe, maybe not. But
18   that's another reason why I think setting a trial date now
19   would be problematic.
20            And finally, Your Honor, just in terms of
21   scheduling, if you were to set a schedule now for a motion
22   date, I think that would -- we would have sort of a
23   placeholder, right, somewhere along the way so everybody knows
24   we are moving forward. But unless you want to set a very
25   loose trial date, I am loathe to commit to a trial date right

1  now.  That is my sense.
2          THE COURT:  Okay.
3          MS. SHROFF:  Of you are setting a motion schedule, I
4  just ask the Court, most respectfully, that I have a
5  September 19th trial date before Judge Ramos.  That case is
6  going to go for three weeks.  And I ask you just to keep in
7  mind that I will sort of be out-of-pocket for that.
8          THE COURT:  So in terms of the review of discovery,
9  is it your position that you would not be in a position to
10 move forward with motion practice until getting through all of
11 the discovery, including the Canadian materials?
12         MS. SHROFF:  Well, let me answer you more
13 specifically.  Say I had a motion to suppress a post arrest
14 statement; of course, I could proceed with that motion, right?
15         THE COURT:  Right.
16         MS. SHROFF:  But to the extent there is something
17 that pops up with our review of the Canadian discovery that we
18 would then want to make a motion on, I really can't answer
19 that without completing that review.
20         THE COURT:  So are there motions that you
21 contemplate that are not dependent on completing the review
22 and is there any reason why we should not go forward and set a
23 motion schedule for those things?
24         You have mentioned before, I think, a motion to
25 suppress.

Proceedings 14

1  MS. SHROFF: Right. We could set a date for in the
2  event that the defendant is going to move to suppress his
3  statement or suppress a search, incident to an arrest,
4  something to that effect, we could set that motion schedule
5  now. But I hate to say that I don't have a motion based on
6  the Canadian discovery when I haven't reviewed it at all. By
7  I, I mean, of course, me and my colleagues.
8  THE COURT: Okay. And do you contemplate any kind
9  of Section 5 process?
10  MS. SHROFF: I don't have an answer for that. I am
11  not sure if the Government has finished their production of
12  all classified discovery.
13  THE COURT: I think Mr. Baldwin -- go ahead.
14  MR. BALDWIN: I think it's safe to say it's
15  substantially completed. It may be that there's one or two
16  things out there as we continue to comb through and make sure
17  that our obligations are met, but I think it's substantially
18  completed at this point.
19  MS. SHROFF: So how about we write to you in thirty
20  days and let you know if we have any CEPA motion practice?
21  THE COURT: So we are almost there on CEPA.
22  MR. BALDWIN: I think so, Your Honor.
23  THE COURT: Okay. Let me just focus a little bit on
24  the Canadian production again.
25  It would seem, and correct me if I'm wrong,

Proceedings                                                              15

1   Ms. Shroff, that what the Government intends to turn over, the
2   draft transcripts and what I'll call a targeted reproduction
3   of materials, that should help focus in.
4            MS. SHROFF:  Sure.
5            THE COURT:  Okay.
6            So there will be a little bit of headway made,
7   hopefully, on that.
8            MS. SHROFF:  May I make a suggestion?
9            THE COURT:  Yes.
10           MS. SHROFF:  How about the Government and defense
11  counsel confer and within a week we send you by letter some
12  sort of timetable, perhaps would that help the Court?
13           I am happy to have you set the schedule now, but --
14           THE COURT:  No, I would much prefer.
15           MR. BALDWIN:  That's fine, Your Honor.
16           THE COURT:  This is very good for me to hear where
17  everybody is.  I want to make sure that there is not any kind
18  of intervention that you need from the Court.
19           MR. BALDWIN:  Your Honor, if I just may suggest, why
20  don't we, since we are planning to provide some of these
21  additional materials, which I hope will be helpful to the
22  defense, and I would intend to do that upon production of the
23  additional discovery that I have, if we could ask for two
24  weeks to do that because that way I could, at least, provide
25  those materials to the defense and that way that can assist

```
                        Proceedings                        16
```

1   them and what they get might help them in terms of figuring
2   out timing.
3               So if we could write our letter --
4               THE COURT:  Do you anticipate the classified, the
5   additional classified to come within those two weeks or --
6               MR. BALDWIN:  Your Honor, I mean to be frank, I
7   don't anticipate any classified.
8               THE COURT:  Okay.
9               MR. BALDWIN:  I never want to be the one to say no
10  we are not going to produce any more because certainly
11  something could be out there that I am just not aware of at
12  this point in time, but candidly, I don't intend or expect
13  that there is going to be any additional classified discovery
14  in the case.
15              THE COURT:  So what seems to make sense is that you
16  do confer.  I would hope that we might be able to have some
17  motion practice on things that are not dependent on further
18  discovery.  And, obviously, I am not cutting off anybody's
19  right to make additional motions, but if we can take care of
20  some of the things that we need to take care of, we should
21  move forward on that on a parallel track to going through the
22  rest of the material and getting ready for trial.
23              I would like you all to think about the longer range
24  schedule.  I think it would be excellent if the Government
25  could produce that targeted production, together with the

Proceedings 17

1  draft transcripts.
2              Would it make sense for us to get back together in
3  September before Ms. Shroff starts her three-week trial and
4  really see where we are?
5              Perhaps before that you can propose, once Ms. Shroff
6  and Mr. Jacobson and the team have the opportunity to review
7  the additional production, hone in on some of the things and
8  to think about all of these issues, you can propose a schedule
9  for me sooner than when we get back together.
10             MR. BALDWIN:  I think that makes sense from our
11 perspective, Your Honor.
12             MS. SHROFF:  That's fine, Your Honor.
13             THE COURT:  Okay.  I just want to make sure you have
14 enough time to confer with your client.
15             MS. SHROFF:  No, we did, Your Honor.  The only issue
16 we were conferring about with Mr. Isa is as I had written to
17 the Court before, he had asked for his appearance today to be
18 excused.
19             I really did want to explain to the Court that part
20 of the reason is because that's what he was used to in Canada.
21 It is not out of any disrespect or disinterest or failure to
22 communicate or keep in contact with his counsel.  On all of
23 those issues, of course the Court may, if it wishes, conduct
24 an inquiry of Mr. Isa.  I was just checking about his next
25 appearance in September and we just simply ask, because it

Proceedings 18

1 would be easier for him in terms of the travel back and forth
2 if we could have a morning appearance.  That was all.
3     THE COURT:  All right, yes, I am going to require
4 Mr. Isa's presence at these conferences, unless there are some
5 extraordinary circumstances that warrant otherwise.  You are
6 always free to make that application, but I am going to
7 require his presence.
8     I am thinking September 9th in the morning.
9     MR. BALDWIN:  That's fine for the Government, Your
10 Honor.  I know Ms. Shroff -- I am not sure if that conflicts
11 with her trial schedule, but that's fine for us.
12     MS. SHROFF:  I start on the 19th, so it's fine.
13     THE COURT:  All right, so I am going to set this
14 down, let's make it 10:30 on the 9th.  I will let you all make
15 headway and maybe a week in advance of the conference you can
16 tell me where you are in terms of a proposed schedule going
17 forward for motions, maybe the type of motion, a realistic
18 trial date, maybe there is some progress on the Tunisian
19 depositions, maybe not.  So I think that would work.  This way
20 I will have a little bit of an idea of where you are before we
21 reconvene.
22     MR. BALDWIN:  That sounds fine from the Government,
23 Your Honor.
24     THE COURT:  All right.  Ms. Shroff, does that work
25 for the defense?

1         MS. SHROFF:  Yes, Your Honor.
2         THE COURT:  Terrific.
3         Is there anything else we need to talk about?
4         MR. BALDWIN:  Your Honor, I am sure you were going
5   to do this anyway, but even though the Court has, I believe,
6   declared this case complex, we would just simply ask for the
7   purpose of the record to exclude time between today and the
8   next appearance on September 9th.
9         THE COURT:  Yes, I will exclude the time.  It is
10  clear that there is considerable work that needs to be done in
11  order for both sides to prepare for trial, to prepare for
12  motion practice in this case.  And in the interest of justice,
13  those issues clearly outweigh any of the other interests of
14  the Government, the defendant and the public under the Speedy
15  Trial Act.  So I would exclude the time.
16        MR. BALDWIN:  Thank you Your Honor.
17        MS. DEMAS:  Thank you.
18        THE COURT:  All right, see you in September.
19        MR. BALDWIN:  Thank you, Your Honor.
20        (Matter adjourned.)
21                     *     *     *     *     *
22  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
23
24      /s/ Stacy A. Mace                    09/12/2016
        _____      _____
25         STACY A. MACE                         DATE