

*U.S. Department of Justice*

*United States Attorney
Eastern District of New York*

DMP:AAS
F. #2010R02201

*271 Cadman Plaza East
Brooklyn, New York 11201*

May 3, 2019

<u>By ECF, Hand Delivery, and Email</u>

Honorable Roslynn R. Mauskopf
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. 'Isa
     Criminal Docket No. 11-819 (RRM)</u>

Dear Judge Mauskopf:

  The government respectfully submits this letter regarding sentencing proceedings in the above-referenced matter, scheduled for June 18, 2019 at 11 a.m. This letter responds to outstanding objections to the Presentence Investigation Report ("PSR") by the defendant and offers additional support for the proposed resolution under Federal Rule of Criminal Procedure 11(c)(1)(C) carrying a recommended sentence of 26 years' imprisonment.

I. The Defendant's Objections to the PSR

  On March 15, 2019, the defendant filed his objections to the PSR. With the following two exceptions, the government does not contest the defendant's objections:

  1. (PSR ¶ 8): The defendant claims that he "did not discuss the logistics of the Tunisian operatives' travel with multiple co-conspirators." However, as set forth in the stipulated facts for the plea agreement, the defendant "(1) contacted Co-Conspirator 6 and suggested that Co-Conspirator 6 get in touch with an individual in Iraq ('Co-Conspirator 4') to help facilitate the border crossing of Co-Defendant 1 and Co-Conspirators 1-3 from Syria into Iraq; and (2) corresponded with Co-Conspirator 4, by electronic chat, to seek his assistance in helping Co-Defendant 1 and Co-Conspirators 1-3 enter Iraq from Syria." (Plea Agr. Ex. A ¶ 6). Accordingly, the defendant <u>did</u> discuss the logistics of the Tunisian operatives' travel with more than one co-conspirator.

> 2. (PSR ¶ 30): The government disagrees with the defendant's characterization of his role in the facilitation conspiracy as that of a "peripheral participant." While the defendant did not, as the PSR incorrectly states, "centralize the terrorist network," the defendant was nonetheless a full-fledged member of the conspiracy—albeit with a comparatively minor role. In particular, the defendant discussed logistics of the Tunisian suicide bombers' travel with at least two co-conspirators (see n.1 supra), and was in contact with prospective Tunisian suicide operatives who unsuccessfully attempted to travel from Tunisia into Iraq beginning in March 2009, later offering himself as personnel to the group (see Feb. 6, 2018 ltr., ECF No. 96 at 6-10).

II. Consideration of the 3553(a) Factors

Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider, among other things:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; [and]

(C) to protect the public from further crimes of the defendant.

Ultimately, the sentence imposed should be "sufficient, but not greater than necessary, to comply with the purposes set forth in" subsection (a)(2), set forth above. As discussed below, application of the Section 3553 factors to this case supports the proposed resolution under Rule 11(c)(1)(C).

A. The Nature and Circumstances of the Offense

As described in detail in the government's February 6, 2018 letter, the defendant belonged to a foreign fighter facilitation network that recruited fighters in Tunisia and arranged for their transportation to Iraq, where they committed suicide attacks against American and coalition forces. The facilitation scheme involved two groups of prospective attackers—one group that departed from Tunisia in or about October 2008 (the "October 2008 Group") and another group that planned to depart from Tunisia in or about March 2009 (the "March 2009 Group"). The October 2008 Group successfully entered Iraq and was responsible for two suicide attacks: an attack on March 31, 2009, which killed 17 Iraqi police

officers; and an attack on April 10, 2009, which killed five U.S. soldiers and two Iraqi police officers. The March 2009 Group was unsuccessful in its efforts to enter Iraq.

The facilitation network consisted of the defendant and several other Tunisia-, Syria-, and Iraq-based co-conspirators who recruited the Tunisian prospective suicide bombers and coordinated their movement from Tunisia to Syria and, ultimately, into Iraq. For example, Syria-based Co-Conspirator 6 and other Syria-based co-conspirators coordinated the travel of the October 2008 Group from Tunisia to Syria, housed the operatives in the October 2008 Group once they reached Syria, and helped arrange for the operatives' transport into Iraq. In addition, Iraq-based Co-Conspirator 4 and other Iraq-based co-conspirators worked to arrange for the travel of the October 2008 Group from Syria into Iraq. Once the operatives in the October 2008 Group entered Iraq, other Iraq-based co-conspirators were responsible for planning the attacks and providing the operatives with the improvised explosive devices ("IEDs") that were used to conduct the attacks that killed and were intended to kill U.S. soldiers.

The defendant knowingly undertook efforts to assist the prospective suicide bombers achieve their desired result by suggesting that Syria-based Co-Conspirator 6 contact Iraq-based Co-Conspirator 4 to facilitate the travel of the October 2008 Group from Syria to Iraq so that they could commit suicide attacks intended to kill U.S. soldiers, and by contacting Co-Conspirator 4 to seek his assistance in helping the Tunisian operatives in the October 2008 Group enter Iraq from Syria. In addition, the defendant communicated directly with certain members of the October 2008 Group. During these communications—via email and instant messaging applications—the defendant offered words of encouragement and religious guidance. However, the defendant was not responsible for planning the attacks or providing the operatives with or helping the operatives procure IEDs.

In sum, the defendant's role in a conspiracy that culminated in the deaths of five U.S. service members (in addition to 19 Iraqi police officers) warrants a serious sentence. In light of the defendant's comparatively minor role in the conspiracy, in which he offered limited logistical support via remote electronic communications (while residing in Canada) without playing any role in the planning of the attacks or the provision of IEDs to the suicide bombers, the government respectfully submits that the nature and circumstances of the offense conduct suggest the appropriateness of the proposed sentence of 26 years' incarceration. See § 3553(a)(1).

B. The History and Characteristics of the Defendant

Although the criminal conduct at issue represents the defendant's first encounter with law enforcement, the crime of conviction implicates exceptionally grave conduct. See § 3553(a)(1).

In addition, after extradition from Canada to the United States, the defendant incurred a number of disciplinary infractions while incarcerated, resulting in the loss of 21 days of good time credit, in addition to the loss of telephone and email privileges. These infractions occurred in 2015 and 2016 and are characterized in the PSR as "phone abuse" and

"failing to follow safety regulations." (PSR ¶ 93). These repeated infractions in 2015 and 2016—occurring relatively soon after the defendant's extradition to the United States from Canada—suggest, at the very least, a reluctance or unwillingness to abide by rules during that period. On the other hand, there is no record in the PSR of infractions at the Bureau of Prisons since 2016.

By entering into this plea agreement, the defendant is also accepting responsibility for his crimes.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment

A sentence of 26 years is sufficient to reflect the seriousness of the defendant's crimes, to promote respect for the law, and to provide just punishment.

There can be no question that the defendant's criminal activity is extremely serious. See 18 U.S.C. § 3553(a)(2)(A). The criminal activity involves purposeful engagement with a facilitation network that sought to murder members of U.S. and coalition forces through suicide attacks. Indeed, the defendant's involvement in a conspiracy to murder U.S. nationals carries a maximum sentence of life in prison, reflecting the seriousness of such an offense.

Moreover, committing terrorist acts and supporting foreign terrorist organizations are both crimes that strike directly against the rule of law. Criminals committing those acts seek not just to hurt or kill but to destabilize and undermine an entire system of laws. As a result, the need to promote respect for the law in this case is particularly significant. See 18 U.S.C. § 3553(a)(2)(A) (one goal of sentence is to "promote respect for the law"). A sentence of 26 years of incarceration will help promote respect for the law by demonstrating that those persons who provide support—even comparatively minimal assistance—to criminal networks that target the lives of Americans will be severely punished.

Finally, in considering the need to impose a "just punishment" upon the defendant, the Court may also "take into account the cost of the defendant's criminal conduct and the cost society must undertake to punish for the offense." Simon v. United States, 361 F. Supp. 2d 35, 43 (E.D.N.Y. 2005) (Sifton, J.). Here, the actual cost of the facilitation network was staggering in terms of its loss of U.S. soldiers' lives, as well as the lives of Iraqi police officers. On the other hand, in light of the defendant's comparatively minor role in the offense, a sentence of 26 years properly accounts for the seriousness of the criminal conduct and would further the goals of just punishment and promotion of respect for the law. See 18 U.S.C. § 3553(a)(2)(A).

### D. The Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct

The need for a sentence to afford adequate deterrence encompasses consideration of both general and specific deterrence. 18 U.S.C. § 3553(a)(2)(B); see, e.g.,

United States v. Tapia-Vitinio, 463 F. App'x 11, 13 (2d Cir. 2011); United States v. Amer, 110 F.3d 873, 883 (2d Cir. 1997).

It is hard to overstate the need to deter those who seek to kill U.S. soldiers or otherwise seek to support foreign terrorist organizations. Indeed, in cases involving plots to conduct mass killings, courts have generally issued lengthy sentences to promote deterrence. For example, Adis Medunjanin, convicted at trial with conspiring and attempting to conduct coordinated suicide bombings in the New York City subway system, was sentenced by Judge Gleeson to life imprisonment. See United States v. Medunjanin, 10-CR-19 (JG) (E.D.N.Y., June 24, 2011). And Emanuel Lutchman, an American citizen from Rochester, New York, who planned and took significant steps toward conducting an attack in Rochester on New Year's Eve in 2015 on behalf of the Islamic State of Iraq and Syria, was sentenced to 20 years in prison in January 2017. See United States v. Lutchman, 16-CR-06071 (FPG) (W.D.N.Y., Aug. 11, 2016). The recommended sentence would similarly advance important deterrence goals.

The proposed sentence would also help avoid unwanted sentencing disparities. The sentences recently imposed by courts in this district in three cases establishes that the proposed sentence in this case is proportional:

- Judge Cogan imposed a sentence of 45 years for a U.S. citizen who conspired to murder American military personnel in Afghanistan, including by helping prepare explosive devices that, had they all detonated properly, would have killed scores of U.S. soldiers at a U.S. military base. Evidence at trial demonstrated that the defendant also ascended to a leadership role within al-Qaeda's external operations group. United States v. Al Farekh, 15-CR-268 (E.D.N.Y., June 15, 2017).

- Judge Dearie imposed a sentence of 40 years for a planner and participant in a plot directed by al-Qaeda to conduct a bombing at a crowded shopping mall in Manchester, United Kingdom. While in Pakistan, the defendant had directly received training from al-Qaeda to prepare for the planned attack, which was foiled days before fruition. The defendant was sentenced after being convicted at trial of multiple terrorism offenses. United States v. Naseer, 10-CR-19 (E.D.N.Y., June 20, 2014).

- Judge Kuntz imposed a sentence of 25 years' imprisonment for a Malian national who shot and murdered U.S. defense attaché William Bultemeier in Niger. The imposed sentence was the result of a disposition under Rule 11(c)(1)(C). United States v. Mohamed, 13-CR-527 (E.D.N.Y. Apr. 26, 2016).

The fact that the defendant in this case is less directly culpable then any of the defendants in Al Farekh, Naseer, or Mohamed—none of whom was a minor participant in a murder scheme—demonstrates the proportionality of the proposed sentence of 26 years. Moreover, the proposed sentence is longer in this case than in Mohamed, even though the defendant in this case did not himself directly engage or attempt to directly engage in acts of violence. Similarly, the defendants in Al Farekh and Naseer were directly involved in the attempted or planned attacks, unlike the defendant in this case; the defendant in Al Farekh helped prepare a vehicle-borne explosive device that did not detonate outside a U.S. military base in Afghanistan, while the defendant in Naseer planned to participate in the attack on the mall. In sum, the proposed sentence is of such length that it would afford adequate general deterrence for individuals who consider even comparatively minor involvement with a conspiracy to murder U.S. nationals, in addition to specific deterrence for the defendant in this case. See 18 U.S.C. § 3553(a)(2)(B).

E. The Need for the Sentence Imposed to Protect the Public from Further Crimes

In the context of the critical goal under Section 3553 of protecting the public from future crimes of the defendant, Judge Cogan's analysis in Al Farekh is particularly instructive. After the defendant had been convicted at trial on terrorism charges carrying up to life imprisonment, Judge Cogan imposed a sentence of 45 years, which sentence was designed so that the defendant would be released, assuming full good time credit while incarcerated, when he was just over 67 years old. (Mar. 13, 2018 Tr. at 22) (attached as Exhibit A). Judge Cogan explained that it was difficult for him to know whether the defendant would present a threat in the future, but thought that perhaps there was some potential for life after imprisonment:

> Is this a defendant as to whom all hope should be extinguished? Based on the seriousness of the crime, it is. Based on the history and characteristics, it may be, it probably is. I do not know, but I still have this impression that there is more value in this defendant than we typically see in defendants who have committed equally heinous crimes. And, therefore, I am going to leave him a small potential, no more than potential, amount of hope and life after imprisonment.

(Id. at 21). That was why Judge Cogan did not sentence the defendant—a U.S. citizen who would not be subject to deportation—to spend the rest of his life in prison but rather imposed a sentence that essentially incapacitated the defendant until he reached an advanced age of just over 67 years old.

In this case, Judge Cogan's analysis applies with even greater force. The defendant would not be released from federal custody until he is approximately 70 years of age and—in contrast to the defendant in Al-Farekh—would be deported immediately after completion of his sentence. Accordingly, the proposed sentence would essentially

6

incapacitate the defendant for the rest of his adult life, thus protecting the public from any recidivism.  See 18 U.S.C. § 3553(a)(2)(C).

    F.  Summary

The government has previously provided the Court with a thorough analysis of why the Court should accept the proposed disposition.  (See Feb. 6, 2018 ltr., ECF No. 96 at 11-13).  The government respectfully submits that the above discussion of the Section 3553 factors provides further support of the appropriateness of the proposed disposition.  In sum, the government respectfully submits that the agreed-upon sentence is reasonable and appropriate, and the Court should accept the plea agreement and impose a sentence of 26 years.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/ Alexander A. Solomon
Alexander A. Solomon
Assistant U.S. Attorney
(718) 254-6074

Enclosure

cc:    Clerk of the Court (RRM)
      Defense counsel